IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CION PERALTA,

        Petitioner,                       No. CIV-S-08-2879 JAM KJM P

   vs.

M. MARTEL,

        Respondent.            FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a California prisoner proceeding pro se with an application for writ of habeas corpus under 28 U.S.C. § 2254. He challenges prison disciplinary proceedings that resulted in his losing thirty days of good conduct sentence credit.

I. Standard of Review

        An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Also, federal habeas corpus relief is not available for any

/////

/////

/////

/////

1

claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").[1] It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth

---

[1] Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief. Fry v. Pliler, 551 U.S. 112, 118-19 (2007).

in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law. If the state court does not reach the merits of a particular claim, de novo review applies. Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004).

"Clearly established" federal law is that determined by the Supreme Court. Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004). At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been "clearly established" and the reasonableness of a particular application of that law. Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court precedent is misplaced).

II. Background

On July 1, 2007, petitioner was found guilty of refusing to obey orders in contravention of California Code of Regulations, title 15 § 3315(a)(3)(J). Pet. at 49.[2] The

/////

/////

/////

---

[2] References to page numbers are to the numbers assigned by the court's electronic docketing system.

decision was based in part on a report authored by Correctional Officer J. Taylor on June 11, 2007. Officer Taylor's report reads as follows, in pertinent part:

> On 6/10/07 at approximately 1830 hours, while performing the evening yard release, inmate PERALTA, P-33314, C15-130L asked me if he could come out to the dayroom to play cards. I said, "No." Peralta is privilege group A2B, and is restricted from evening program. At approximately 2025 hours, I spotted PERALTA at a dayroom table playing cards. PERALTA is aware of his rights and responsibilities as they pertain to his privilege group. Inmate PERALTA is aware of this report. . .

Id. at 47. In other words, petitioner was found guilty of refusing to obey orders, not merely for disobeying Officer Taylor but for violating the terms of "privilege group A2B" by being in the dayroom at night. Id. As a result of the finding of guilt, petitioner lost thirty days of good conduct sentence credit because, according to the hearing officer, such a violation is a "Div. F-3 (CCR 3315(a)(3)(J)) offense."[3] Id. at 49.

Petitioner has the following federal rights with respect to prison disciplinary proceedings that result in the loss of good conduct sentence credit:

1) Advance written notice of the charges;

2) An opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in their defense;

3) A written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action; and

/////

/////

---

[3] California Code of Regulations, title 15 § 3315(a)(3)(J) classifies inmate misconduct as "serious" if it involves "[r]efusal to perform work or participate in a program as ordered or assigned." An inmate found guilty of a serious rules violation is "assessed a credit forfeiture pursuant to section 3323." 15 Cal. Code Regs. § 3315(f)(3). The credit forfeiture in this case appears to have been based on the fact that the violation met the criteria listed in section 3315, was not a crime, and was "not identified as administrative in section 3314." 15 Cal. Code Regs. § 3323(h)(10); see also 15 Cal. Code Regs. § 3314.

4) That the findings of the prison disciplinary board be supported by some evidence in the record. Superintendent v. Hill, 472 U.S. 445, 454 (1985). "Some evidence" is a "modicum" of evidence or "any evidence," Hill, 472 U.S. at 455, having some indicia of reliability, Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994). The "some evidence" requirement is a "minimally stringent" standard, id., and does not require the court to reweigh the evidence or examine the entire record. Hill, 472 U.S. at 455.

Petitioner's claim as articulated in the petition is "denial of due process and controling [sic] authority under law." Pet. at 4. He asserts the violation report was "illegally written," and led to "an illegal disciplinary action." Id. He also references exhibits to the petition, comprising the petitions he filed at all three levels of the state courts. Id. From these state petitions, two cognizable federal claims can be distilled.

First, petitioner asserts in essence that there is no evidence to support the finding that he disobeyed orders because as a member of "privilege group A2B" he was in fact authorized to be in the dayroom during the evening hours. Pet. at 11, 26.[4] However, he fails to point to anything supporting this claim. Petitioner makes much of the fact that regulations provide that members in a "B" privilege group are eligible for recreation while they are not working. See Pet. at 10. He neglects to mention, however, that recreation can be limited to those in the "B" group by "institution/facility security needs." 15 Cal. Code Regs. § 3044(e)(3)(E). As noted, Officer Taylor's report indicates petitioner was eligible for daytime use only of the dayroom, and that earlier in the day at issue, Officer Taylor had denied petitioner's request to "come out to the dayroom to play cards." Pet. at 47. At hearing petitioner conceded that Officer Taylor "told me at yard release that I couldn't [come out to the dayroom], but I thought that he

---

[4] Petitioner labels his claim as one based on procedural due process violations under the Sixth and Fourteenth Amendments, and describes the facts supporting the claim as respondents' failure to follow and apply the law. The court construes the claim as raising insufficiency of the evidence concerns.

meant I might be able to later." Id. at 48. In his petition, petitioner does not present any evidence to the contrary, but rather appears to argue that his institution should exercise its discretion to allow inmates in his group daytime access to the dayroom. See, e.g., id. at 19-20, 36-38.

In the context of the entire record, Officer Taylor's report that petitioner was in the dayroom in violation of the terms of his program is at least "some evidence" that petitioner violated the applicable regulation. Hill, 472 U.S. at 455; Powell, 33 F.3d at 40. Although petitioner says Officer Taylor's report is fabricated in that petitioner says he did have permission to be in the dayroom at the time in question, petitioner fails to point to anything upon which this court could base a conclusion that Officer's Taylor's report cannot be considered as the minimally requisite evidence in this matter.

Second, in certain passages, petitioner suggests he should have been allowed to call "Inmate Marshall" and Officer Taylor as a witnesses. Pet. at 21, 37, 49; but see id. at 26 (stating inability to call certain witnesses not ground of petition). According to the report issued following the disciplinary hearing, inmate Marshall was not allowed to testify because it was determined any testimony he might offer would be duplicative. Id. at 49. Petitioner asked that Marshall be called to confirm that Marshall asked Correctional Officer Cribari if petitioner could leave his cell for the dayroom on the evening of June 10, 2007. Id. The hearing officer declined to hear from inmate Marshall because Officer Cribari testified at the hearing that Marshall did in fact request that petitioner be allowed out of his cell, id., and so the evidence that could have been adduced from Marshall was already before the hearing officer. Moreover, petitioner does not identify anything Officer Taylor might have said if he had testified that would establish facts other than those identified in the report Taylor prepared.

Petitioner does not have an absolute right to call whomever he desires as a witness at a prison disciplinary proceeding, and a witness can be denied if his testimony is unnecessary. Wolff v. McDonnell, 418 U.S. 539, 566 (1974). Because nothing suggests inmate Marshall or

Officer Taylor had anything meaningful to add to the evidence presented at the disciplinary hearing, any claim arising from the hearing officer's decision to disallow Marshall and Taylor as witnesses should be rejected.

For the foregoing reasons, the court will recommend that petitioner's application for a writ of habeas corpus be denied. The court therefore declines to reach respondent's other arguments in favor of denial based on failure to exhaust and procedural default.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 10, 2010.

_____
U.S. MAGISTRATE JUDGE

---

[1] pera2879.157